UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN L. HENDRICKSON,

            Plaintiff,

     v.

THURSTON COUNTY, et al.,

            Defendants.

CASE NO. C06-5374BHS

ORDER DISMISSING
SELECTED CLAIMS AND
ORDERING THE PARTIES TO
SHOW CAUSE

This matter comes before the Court on six summary judgment motions, five which were filed by Defendants (Dkts. 124, 129, 130, 132, and 137) and one filed by Plaintiff (Dkt. 134). The Court has considered the pleadings filed in support of and in opposition to these motions and the remainder of the filed herein.

This matter arises from Plaintiff Kevin Hendrickson's allegations that the City of Tacoma and Tacoma City Police Officers William Budinich and Michael Romaine, the remaining Defendants in this action, wrongfully confined him in jail after mistaking him for another individual for whom there was an outstanding arrest warrant. Mr. Hendrickson also alleges that the Defendants illegally searched, seized and never returned his personal property, including his pickup truck, car, and car hauler.

## I. FACTUAL BACKGROUND

At all times relevant, Mr. Hendrickson was employed at Downtown Auto Body ("the body shop"), located on South Tacoma Way in Tacoma, Washington, near the

intersection at South 45th Street. South Washington Street runs parallel to South Tacoma Way, and is located just west of Downtown Auto Body.

Mr. Hendrickson contends that he purchased a used 1991 Chevrolet S-10 pickup truck ("truck") in May 2004. He maintains that he registered the truck with the Department of Licencing ("DOL") using the loss title affidavit which was provided to him by the seller. Mr. Hendrickson later received license plates from DOL and attached them to the truck. The vehicle identification number ("VIN number") listed on the title did not match the actual VIN number affixed on the truck. Mr. Hendrickson maintains that he was unaware of this discrepancy before and after he purchased this truck.

A few days before August 23, 2004, Mr. Hendrickson maintains that he attended an abandoned vehicle auction in Olympia, Washington, and purchased a used 1992 Pontiac Grand Prix ("Pontiac"). He was provided an abandoned vehicle report ("AVR"), which was a temporary title for the vehicle. Mr. Hendrickson placed this AVR in the glove compartment of his truck, and maintains that he intended to register the Pontiac with DOL later that day or soon thereafter.

Unable to immediately transport the Pontiac, Mr. Hendrickson left the Pontiac at the auction site and returned on the morning of August 23, 2004, to tow it back to Tacoma. To tow the Pontiac, Mr. Hendrickson maintains that he utilized a car hauler he previously obtained at a different abandoned vehicle sale. Mr. Hendrickson towed the Pontiac using his truck and the car hauler to Downtown Auto Body, where he legally parked on South Washington Street, across a large vacant lot from the body shop.

## A. PLAINTIFF'S ARREST FOR POSSESSION OF STOLEN PROPERTY AND OUTSTANDING WARRANT

At around 9:00 a.m. on the morning of August 23, 2004, Michael Brutsche was driving through Tacoma when he spotted a large cargo trailer in an unfenced parking lot between South Tacoma Way and South Washington Way next to the body shop. Mr.

Brutsche recognized the trailer as his grandfather's, which had been stolen several months earlier. He called his grandfather and the police and waited for both to arrive.

While Mr. Brutsche was waiting, he saw a man, later identified as Mr. Hendrickson, drive up in his truck hauling the Pontiac. Mr. Hendrickson was then seen approaching the trailer and attempting to access the trailer. Mr. Hendrickson then went into the body shop next to the vacant lot. Soon after Michael Brutsche arrived at the vacant lot, his grandfather, Leo Brutsche, met him at the lot.

Tacoma Police Officers Budinich and Romaine responded to Michael Brutsche's call. When they arrived at the vacant lot, Leo Brutsche informed the officers that the trailer in the lot was his and that it had been stolen. Officer Budinich confirmed the VIN number on the trailer and that the trailer had been reported stolen. The Brutsches also informed the officers that they witnessed Mr. Hendrickson get out of his truck and attempt to access the trailer. They also informed the officers that Mr. Hendrickson had entered the body shop next to the lot.

Officer Budinich then went to the building of the body shop, where he located Mr. Hendrickson. According to Mr. Hendrickson, the officer looked at the driver's license and informed Mr. Hendrickson that he was under arrest for an outstanding warrant out of Thurston County. According to Defendants, the officer initially placed Mr. Hendrickson under arrest for possession of stolen property. Defendants maintain that Mr. Hendrickson first denied having any involvement with the stolen trailer, but later admitted that he was storing some of his personal items in the trailer. Officer Budinich then took the keys from Mr. Hendrickson's belt and used the keys to open most of the locks of the trailer.

Defendants maintain that Officer Budinich discovered the outstanding warrant after placing Mr. Hendrickson under arrest when he conducted a routine warrants check by radioing the Records Center of the Law Enforcement Support Agency ("LESA"). LESA ran the check for Officer Budinich by running Mr. Hendrickson's name and date of

birth. In his deposition, Officer Budinich maintains that he probably asked Mr. Hendrickson for his name and date of birth, but did not recall obtaining his driver's license. The operator at the Records Center advised Officer Budinich that there was a confirmed warrant for Mr. Hendrickson.

As it turns out, the warrant in question was actually for Robert Eugene Christensen, who had allegedly stolen Mr. Hendrickson's identity. Apparently, Mr. Christensen provided officers with the name "Kevin Hendrickson" and gave them Mr. Hendrickson's correct date of birth when Mr. Christensen was arrested in 1999. As a result, the name "Kevin Hendrickson" with the date of birth "2/21/55" was listed in various law enforcement systems as an alias for Mr. Christensen. Consequently, when LESA ran a warrants check on Mr. Hendrickson, the check revealed an outstanding warrant for "Robert Christensen, aka Kevin Hendrickson."[1] This warrant had a "no bail hold" on it, meaning that Mr. Hendrickson could not be released on the outstanding warrant charge prior to appearing before a judge. *See* Dkt. 141-3 at 7 (deposition of Officer Budinich).

---

[1] According to Defendants, when a police officer wants to check for outstanding warrants for an individual, he or she may contact LESA by radio and provide the Records Specialist with the person's full name and date of birth. Dkt. 157 at 2 (declaration of Bonnie Voegele, Acting Assistant Director for the Records Division of LESA). The specialist will then run this information through the state ACCESS system, which pulls information from different databases. The ACCESS system will provide a list of possible records relating to the person, based on the name entered, including all aliases associated with that name. In this case, Thurston County officials had entered Mr. Hendrickson's name and date of birth as an alias for Robert Christensen in WACIC, one of the databases from which ACCESS draws information. *Id*. at 7. Thurston County also sent a correct copy of the "teletype" warrant to LESA, which is submitted to LESA to "confirm the validity of a warrant at the time a possible subject is identified." *Id.* at 5 and 9. The teletype warrant for Mr. Christensen did not include any aliases. However, Defendants maintain that the teletype warrant issued for Mr. Christensen was "not the actual warrant issued by the court . . . [and did] not contain or reflect all of the information listed in ACCESS." *Id*. at 5 (emphasis removed). In contrast, Defendants maintain that the WACIC record did reflect the information inputted by Thurston County officials for this warrant.

After the arrest, Officer Budinich transported Mr. Hendrickson to the Pierce County Jail, where he was booked on two charges: possession of stolen property and the outstanding Thurston County warrant.

According to Mr. Hendrickson, Officer Budinich never asked Mr. Hendrickson whether his name was Robert Christensen or otherwise inquired as to whether Mr. Hendrickson was providing his correct identity. Mr. Hendrickson further maintains that Officer Budinich later received a copy of Mr. Christensen's warrant, and that this warrant did not have any information about Mr. Hendrickson, including Mr. Hendrickson's name, date of birth, or physical description. Apparently, Mr. Hendrickson is referring to the "teletype" warrant that lists only Robert Christensen's name. *See* Dkt. 157 at 9.

In his deposition, Officer Budinich stated that he couldn't recall whether he received a copy of the warrant while he was at the Pierce County Jail, but that he "must have" seen a copy of the warrant because he booked Mr. Hendrickson under the outstanding warrant charge. Dkt. 145-2 at 6. Officer Budinich testified that upon reaching the jail after arresting a suspect on an outstanding warrant, he normally would contact LESA, which would fax him a copy of the warrant to the jail. Once he obtains the fax, Officer Budinich said that he normally "hands [the faxed copy of the warrant] over to the jail staff." He further testified that he booked Mr. Hendrickson under the warrant because "[Mr. Hendrickson] was the name on the warrant," and "as far as [Officer Budinich] knew, that was [Mr. Hendrickson's] name on the warrant or one of his aliases." *Id.* Officer Budinich's incident report indicated that the warrant was a no-bail hold warrant. *Id.* at 7.

Officer Budinich also stated that he normally looks through the jail booking system to confirm the identity of a suspect whom he arrests on an outstanding warrant. He stated, "as I recall, there was a photo of Mr. Hendrickson . . . [which included] a date of birth" in the jail booking system.

On August 24, 2004, Mr. Hendrickson was charged with possession of stolen property in Pierce County Superior Court and bail was set at $10,000. Mr. Hendrickson maintains that he attempted to make bail that day by posting $1,000 with a bail bondsman, but was refused bail because the warrant out of Thurston County had a no-bail hold on it. According to Mr. Hendrickson, the bail bondsmen whom he and others contacted were concerned that if Mr. Hendrickson posted bail in Pierce County, and was subsequently sent to Thurston County to face the warrant charge, he could miss his court date in Pierce County. Mr. Hendrickson contends that because of this possible scenario, the bondsmen did not "want to get [their] hands involved."[2] For the next 11 days, Mr. Hendrickson remained in Pierce County Jail, while he and others attempted to figure out a way to post the full bail amount. On or before September 3, 2004, Mr. Hendrickson was able to come up with $10,000 to post bail on the possession of stolen property charge, and was released from Pierce County Jail.

On September 3, 2004, Mr. Hendrickson was transferred to Thurston County Jail because of the outstanding warrant charge. Officials there fingerprinted Mr. Hendrickson and determined that he was not Robert Christensen or the subject of the bench warrant. Mr. Hendrickson was then released from Thurston County Jail.

Pierce County prosecutors later amended the possession of stolen property charge to include multiple counts of identity theft based on evidence found in Leo Brutsche's trailer. Mr. Hendrickson was eventually convicted on three counts of identity theft and was sentenced to 48 months in prison.

**B.     SEARCH AND SEIZURE OF PROPERTY**

After the arrest, Officer Romaine began running the license plates and VIN numbers on about a half dozen vehicles in the vacant lot to determine whether they were

---

[2] Mr. Hendrickson did not provide any evidence of these alleged statements by the bondsmen, other than Mr. Hendrickson's own deposition.

reported stolen. He then went over to Mr. Hendrickson's truck due to one of the reporting victims informing him that Mr. Hendrickson got out of the truck. Officer Romaine ran the license plate, which came back registered to Mr. Hendrickson, and was not reported missing or stolen. The year, make, model, and color of the truck registered under the license plate matched the description of the truck. Officer Romaine ran the same check on the license plate of the Pontiac, and that car also was not reported missing or stolen. Presumably, the Pontiac did not come back registered to Mr. Hendrickson because Mr. Hendrickson maintains that he had just purchased the vehicle and had not yet filed the registration paperwork with DOL. In addition, the Court also presumes that the car hauler would not have come back registered to Mr. Hendrickson. Indeed, Defendants provided evidence that the tow dolly[3] was reported stolen by U-Haul.

In any event, Officer Romaine then compared the VIN number on the truck to the VIN number he obtained from the registered license plate of the truck. The officer was able to view the VIN by looking through the truck's front window. He discovered that the VIN on the truck did not match the VIN registered with the truck license plate. Officer Romaine then ran a search on the VIN affixed to the truck. The search did not indicate a missing or stolen report; instead the search indicated that the listed registered owners under the VIN on the truck were people in Texas, and not Mr. Hendrickson.

Officer Romaine also searched the inside of the truck without first obtaining a search warrant. According to Officer Romaine, he conducted this search because the truck "had switched plates . . . [and] it's [his] responsibility to identify who owns [the truck]." Officer Romaine maintains that he did not "personally inventory" the truck. He maintains that he did not search the Pontiac.

Officer Romaine had the truck, Pontiac, and car hauler impounded because he believed that the truck had "switched plates." The Pontiac and car hauler were impounded

---

[3] Defendants use "tow dolly" interchangeably with "car hauler."

ORDER – 7

because they were attached to the truck. Defendants maintain that the truck, Pontiac, and car hauler were impounded for "further criminal investigation." Dkt. 129 at 5. A police hold was placed on all three vehicles, meaning that the vehicles could not be released until the hold was lifted.

According to Defendants, the Tacoma Policy Department has a policy whereby all police reports regarding impounds and vehicle crimes are electronically routed to the sergeant in charge of property crimes. The sergeant then evaluates the case and decides whether to assign it to a detective, based on "solvability factors" and available resources. If the case is not assigned to a detective, it becomes a "file case" and the police hold on the vehicles is released. Defendants maintain that the police hold on the vehicles was lifted about a month after the impound.

After the police hold was lifted, the tow company Gene's Towing[4] began the process of returning the vehicles to their lawful owners. At some point during this process, Gene's discovered that the tow dolly had been stolen from U-Haul. Gene's notified U-Haul, which subsequently came and recovered the tow dolly. Gene's also sent notices to the registered owners of the truck in Texas based on registration records associated with the VIN affixed to the truck.[5] Gene's also sent notices to the registered owners of the Pontiac. Gene's did not send any notice to Mr. Hendrickson, because Defendants contend that, according to DOL and LESA records, Mr. Hendrickson "was not the legal or registered owner" of any of the impounded vehicles. Dkt. 129 at 7.

---

[4] Gene's Towing is a subcontractor of Bill's Towing, which has a contract with the City of Tacoma. Dkt. 170, 7-8 (Declaration of Elizabeth Myers of Gene's Towing). Gene's provides towing and impounding services for the city. *Id.*

[5] According to Ms. Myers, Gene's Towing sends notices only to registered owners of the VIN affixed to impounded vehicles, and not to registered owners of license plates attached to these vehicles "[b]ecause the VIN number is the permanent number on the vehicle." Dkt. 170 at 6. She also maintains that when the DOL processes an abandoned vehicle report, it only runs the VIN number, and not the registered plate attached to a vehicle. *Id.*

Mr. Hendrickson maintains that on a couple occasions, he contacted Gene's to recover the vehicles and was told that the vehicles could not be released because of a police hold.

It is not clear from the record whether the City or Gene's conducted an inventory of any of the vehicles, and if an inventory was conducted, whether they located the registration paperwork for the Pontiac which Mr. Hendrickson claims to have placed in the glove box of the truck. It is also unclear whether any of Mr. Hendrickson's personal property was located in the truck or Pontiac. Mr. Hendrickson maintains that he had personal property inside the truck that was never returned to him, including his tools, eyeglasses, laptop, and camera. Dkt. 144 at 3.

Defendants maintain that the individuals who were sent notices did not come to recover the vehicles. Defendants further contend that "pursuant to state law," the truck and Pontiac were deemed abandoned and were sold at an auction.

## C. STATE AND LOCAL LAW

Under Washington state law, an application for a certificate of ownership of a automobile must contain "the proper vehicle identification number." RCW 46.12.030(1)(a). In certain situations, such as when a vehicle has been salvaged, a physical examination may be required prior to issuance of a certificate of ownership. *See generally* RCW 46.12.030(3). "No vehicle license number plates or certificate of license registration . . . may be issued or furnished by [DOL] unless the applicant, at the same time, makes *satisfactory* application for a certificate of ownership." RCW 46.12.020(1) (emphasis added). "Registered owner" means the person whose lawful possession of a vehicle was most recently recorded with the DOL. RCW 46.04.460.

Under state law, a tow agency is required to notify local law enforcement when it has impounded a vehicle, and local law enforcement is required to provide to the tow agency the "address of the legal and registered owners of the vehicle, and the registered owner of any personal property registered or titled with the department that is attached or

contained in or on the impounded vehicle, the vehicle identification number, and any other necessary, pertinent information." RCW 46.55.100(1). State law also requires tow agencies to provide notice to owners of vehicles that have been impounded. *See* RCW 46.55.110.

Under the Tacoma Municipal Code, a tow agency is required to mail notice to the "last known and legal owners of the vehicles, as may be disclosed by the vehicle identification number, and as provided by [DOL]." TMC 11.05.702(A). "The notice shall contain the full particulars of the impoundment, redemption, and opportunity for hearing to contest the propriety of the impoundment." *Id.*

## II. PROCEDURAL BACKGROUND

On July 27, 2006, Mr. Hendrickson filed a pro se civil rights complaint. Dkt. 5. He later obtained counsel. Several Defendants in this action have been dismissed, and the City of Tacoma, and Officers Budinich and Romaine are the only remaining Defendants.

On October 20, 2007 Mr. Hendrickson filed a third amended complaint, and alleged fourteen counts. Dkt. 60. The following counts, numbered as they are in the complaint, apply to all remaining defendants:

1. Unreasonable seizure in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as secured by 42 U.S.C. § 1983, for incarcerating Plaintiff without bail for the outstanding bench warrant;

2. Violation of the Fourth, Fifth, and Fourteenth Amendments, as secured by 42 U.S.C. § 1983, for failing to ensure that Plaintiff was the individual wanted in the arrest warrant;

3. Violation of the Fourth, Fifth, and Fourteenth Amendments, as secured by 42 U.S.C. § 1983, for illegally searching and seizing Plaintiff's personal property without a warrant;

4. Violation of the Fourth, Fifth, and Fourteenth Amendments, as secured by 42 U.S.C. § 1983, for failing to return Plaintiff's personal property that was seized during his arrest;

11. Negligence for all the actions and conduct described in the complaint;

12. False arrest and false imprisonment; and

14. Conversion for depriving Plaintiff of property.

*Id*.

Counts 5, 6, 7, 8, and 9 allege "municipal liability," and apply only to the City of Tacoma. These counts appear to relate to the Section 1983 claims, and allege that the City of Tacoma developed, maintained, and/or promoted policies that allowed officers to violate Plaintiff's constitutional rights as alleged in counts 1, 2, 3, and 4. Count 10 alleges negligent hiring, training and supervision. The remaining count, 13, alleges that the City of Tacoma is liable for the officers' actions based on "respondent [sic] superior."

Defendants have filed five motions for summary judgment. Defendants first move to dismiss Plaintiff's claims that challenge the legality of his arrest based on collateral estoppel. Dkt. 124. Defendants' second motion seeks dismissal of Plaintiff's Section 1983 claims against the City of Tacoma based on lack of municipal liability. Dkt. 129. Defendants' third motion seeks dismissal of Plaintiff's Section 1983 claims against Officers Budinich and Romaine on the basis of qualified immunity. Dkt. 130. Defendants' fourth motion seeks dismissal of Plaintiff's claim for punitive damages. Dkt. 132. Defendants' final motion seeks dismissal of Plaintiff's state tort and negligence claims. Dkt. 137.

Plaintiff filed a motion for partial summary judgment, and moves the Court to conclude as a matter of law that Officer Romaine and the City of Tacoma violated his due process rights under the Fourteenth Amendment by depriving him of pre- and post-impoundment notices. Dkt. 134.

Plaintiff stipulates to the dismissal of his negligent hiring and negligent supervision claims. Dkt. 144 at 23.

## III. LEGAL STANDARDS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     SECTION 1983**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. § 1983, plaintiffs must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied.

Analysis of a procedural due process claim under Section 1983 involves two questions: (1) whether the plaintiff has been deprived of a life, liberty, or property interest that is constitutionally protected, and, if so, (2) whether the "procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

If a plaintiff establishes that he or she was deprived of a protected interest, a court should apply the balancing test as set out in *Matthews v. Eldridge*, 424 U.S. 319 (1976), in order to determine whether the procedures were constitutionally sufficient:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Oviatt v. Pearce*, 954 F.2d 1470, 1475-76 (9th Cir. 1992) (*quoting Matthews*, 425 U.S. at 335).

## C.    QUALIFIED IMMUNITY

Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819.

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

In the context of a warrantless search, a police officer may assert qualified immunity even when probable cause is absent, so long as the officer was objectively reasonable in concluding that probable cause existed. *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (if there is a legitimate question as to the unlawfulness of the conduct, qualified immunity applies); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991)**.**

## D.    MUNICIPAL LIABILITY

The language of Section 1983 is expansive and does not expressly incorporate common law immunities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 637 (1980). However, municipalities and other local governing bodies, such as school districts, are

subject to suit under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Municipalities are not liable merely for employing tortfeasors, and respondeat superior is an insufficient basis for establishing municipal liability. *Monell*, 436 U.S. at 690. Rather, a plaintiff must establish that a policy or custom of the municipality caused the constitutional injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166 (1993). This requirement distinguishes acts of the municipality from acts of municipal employees. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

Municipal liability may be based on an express municipal policy, such as an ordinance, regulation, or policy statement. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (*citing Monell*, 436 U.S. at 690). It may also attach where the municipality maintains a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well-settled as to constitute a custom or usage' with the force of law." *Id.* at 127 (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

However, "the existence of a policy, without more, is insufficient to trigger local government liability under Section 1983." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (*quoting City of Canton*, 489 U.S. 378, 388-89 (1989)). Before a local entity may be held liable for failing to preserve a constitutional right, a plaintiff must demonstrate that the official policy "evidences a 'deliberate indifference'" to his or her constitutional rights. *Id.* This occurs when it is so "obvious" that the current procedure is likely to result in the violation of constitutional rights, that the policymakers can be reasonably said to have been indifferent to the need to craft a policy with the requisite constitutional safeguards. *Id.* "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Id.* (*citing Davis v. Mason County*, 927 F.2d 1473, 1482 (9th Cir. 1991)).

There also must be sufficient causation between the policy and the violation of a plaintiff's constitutional right. *See Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 400

(1996) (local government entity is not liable unless "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights").

## IV. DISCUSSION

**A.    PLAINTIFF'S SECTION 1983 CLAIMS**

Mr. Hendrickson and Defendants agree that Defendants acted under the color of state law with respect to the arrest, booking, search and initial seizure of the vehicles. The parties dispute whether Mr. Hendrickson was deprived of any constitutional rights. The Court will first address the issue of whether Mr. Hendrickson was deprived of a constitutional right, and then address the issue of whether qualified immunity applies as to Officers Budinich and Romaine, and finally, whether the City may be held liable based on municipal liability.

### 1.    Charge and Booking for the Outstanding Warrant

It is not entirely clear from the complaint whether Mr. Hendrickson is alleging a violation of his constitutional rights based on his arrest for the outstanding warrant, or if this allegation instead arises solely from Officer Budinich's alleged failure to remove the outstanding warrant charge when he booked Mr. Hendrickson at Pierce County Jail. In his response to Defendants' first motion for summary judgment, Mr. Hendrickson maintains that he is not challenging his arrest for possession of stolen property, but he is challenging Officer Budinich's "wrongful[] charging [of] Hendrickson for an outstanding bench warrant." Dkt. 140 at 1.[6] The Court will address two aspects of Officer Budinich's "charging" of Mr. Hendrickson for the outstanding warrant: (1) the arrest of Mr.

---

[6] By stipulating that he is not challenging the arrest based on the possession of stolen property charge, Defendants' motion based on collateral estoppel (Dkt. 124) necessarily prevails, to the extent that motion seeks to preclude Mr. Hendrickson from alleging claims based on that charge. Based in part on the fact that the arrest and booking was supported by probable cause for the possession of stolen property charge, Mr. Hendrickson's claims arising from the arrest and booking also fail as discussed in this order.

Hendrickson and (2) Officer Budinich's act of booking him at the Pierce County Jail after allegedly receiving a copy of Mr. Christensen's arrest warrant.

Probable cause is a complete defense to a Section 1983 claim brought under the Fourth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). An arrest is justified so long as the police officer has probable cause to arrest the individual "as to any offense that could be charged under the circumstances." *See, e.g., Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3rd Cir. 1994). "Probable cause can be determined as a matter of law 'if there is no dispute as to the pertinent events and the knowledge of the officers.'" *Carson v. Lewis*, 35 F. Supp. 2d 250, 257 (E.D. N.Y. 1999) (*quoting Andersen*, 483 U.S. 641)

Mr. Hendrickson's claim that Officer Budinich violated his constitutional rights by arresting him for the outstanding warrant fails. There is no genuine dispute of fact that the warrant issued for Mr. Christensen included Mr. Hendrickson's name as an alias. Moreover, the parties agree that Officer Budinich had independent probable cause to arrest Mr. Hendrickson based on the possession of stolen property charge.

Mr. Hendrickson also maintains that Officer Budinich violated his liberty interests under the Constitution by failing to remove the outstanding warrant charge upon booking Mr. Hendrickson at the Pierce County Jail. He maintains that he was unable to post bail for the possession of stolen property charge for 11 days because of the no-bail hold on the outstanding warrant charge out of Thurston County.

 The Court notes that Mr. Hendrickson is not arguing that the outstanding warrant charge enhanced the bail set by Pierce County Superior Court; that bail, set at $10,000, was based on the possession of stolen property charge. Rather, Mr. Hendrickson is

arguing that a constitutional violation occurred because the outstanding warrant charge out of Thurston County caused bail bondsmen to refuse him a bond to assist him in posting bail out of fear that Mr. Hendrickson would miss his court date for the possession of stolen property charge.[7]

Mr. Hendrickson has offered no legal authority that supports his contention that a constitutional violation occurs when a police officer lawfully arrests and books an individual for one crime, but also erroneously charges the individual with an outstanding warrant, and this erroneous charge influences third-party bail bondsmen to refuse to issue a bond to assist the individual in posting bail on the lawful charge. The Court is not persuaded by this argument and this claim must fail.

This claim also fails to the extent Mr. Hendrickson bases the alleged constitutional violation on the delay in obtaining his release from the time he posted bail on the possession of stolen property charge to the time he was released by Thurston County officials for the outstanding warrant charge. The Supreme Court's decision in *Baker v. McCollan*, 443 U.S. 137 (1979), controls here.

In *Baker*, the respondent's brother had used the respondent's name when he was arrested. The respondent was arrested on a facially valid outstanding warrant that was intended to be issued for the brother. The respondent remained in jail for about three days before being released. The Supreme Court held that there was no constitutional violation based on the arrest and booking for the erroneous warrant.

Similarly, there was no constitutional violation here. Mr. Hendrickson alleged that after he was booked at Thurston County, he was quickly released. Mr. Hendrickson did not appear to have spent a significant period of time in Thurston County jail prior to the

_____

[7] The Court also notes that the only evidence offered in support of the bondsmen's alleged refusal to issue the bond are Mr. Hendrickson's own statements, and he has offered no exception to the hearsay rule that makes these statements admissible. *See* Fed R. Civ. P. 56(e)(1) ("[a] supporting or opposing affidavit must . . . set out facts that would be admissible in evidence").

time the error was discovered and he secured his release. The eleven days Mr. Hendrickson spent in Pierce County Jail did not arise out of the outstanding warrant charge because Pierce County set bail based solely on the possession of property charge.

Officer Budinich is also entitled to qualified immunity because no clearly established right was violated. Even if the arrest and booking on the warrant charge had violated Mr. Hendrickson's constitutional rights, a reasonable officer in the officer's position would not have believed a right was violated, especially because there was independent probable cause to charge and book Mr. Hendrickson for possession of stolen property.

In addition, the City cannot be held liable because Mr. Hendrickson has not identified any policy that was the "moving force" behind the alleged constitutional deprivation.

For these reasons, this claim must be dismissed as to all Defendants.

**2.      Search of Pickup Truck**

Mr. Hendrickson moves the Court to find that, as a matter of law, Officer Romaine violated his Fourth Amendment rights by conducting the warrantless search of the truck. He argues that the officer acted without probable cause because the vehicles had not been reported stolen, and that Officer Romaine acted improperly by searching the truck for evidence of ownership because "he already had that information." Dkt. 134 at 20. Defendants have also filed a motion for summary judgment, and move the Court to dismiss this claim. Dkt.130.[8]

The Court concludes that no constitutional violation occurred as a result of the search of Mr. Hendrickson's truck. There is no dispute that the officers lawfully arrested Mr. Hendrickson for possession of the stolen trailer. It is undisputed that the VIN affixed to the actual pickup truck was not registered to Mr. Hendrickson. It is also undisputed that

---

[8]Defendants allege that Mr. Hendrickson lacks standing. For purposes of this motion only, the Court concludes that Mr. Hendrickson has standing. *See* subsection (5), *infra*.

Officer Romaine did not conduct a search of the vehicle in order to observe the VIN; he observed the VIN from the outside of the vehicle. Further, Officer Romaine knew that Mr. Hendrickson had driven the truck based on statements from the Brutsches. After discovering the discrepancy between the license plate and the VIN, it was entirely reasonable for Officer Romaine to conduct a search of the vehicle for evidence of ownership. *See United States v. Jamerson*, 549 F.2d 1263, 1271 (9th Cir. 1977) (warrantless search permissible where police intrusion into a vehicle is necessary to safeguard an owner's property); *see also U.S. v. Brown*, 535 F.2d 424, 428 (8th Cir. 1976) (observing that VIN numbers did not match on car following defendant's arrest on unrelated charge, officers had probable cause to believe the car was stolen and seized the vehicle).

Mr. Hendrickson's apparent contention that the officer acted unreasonably in suspecting that Mr. Hendrickson did not own the truck is disingenuous, especially in light of the fact that Mr. Hendrickson had previously been charged of a very similar crime as suspected here – in 1998, Mr. Hendrickson was convicted of possession of stolen property, arising from charges that he had switched VIN plates on stolen vehicles. Dkt. 125-5, 12-26. Mr. Hendrickson's other arguments in support of his motion for summary judgment are also unavailing. First, Mr. Hendrickson offers no legal authority that supports his contention that a vehicle must be reported stolen to give rise to probable cause that a vehicle does not belong to the individual driving the vehicle. Second, as to Mr. Hendrickson's claim that the search for evidence of ownership was unreasonable, it may not have been sufficient for Officer Romaine to rely solely on the report that indicated the true owner of this vehicle resided in Texas because there was a discrepancy between the license plate and the VIN. Officer Romaine acted properly by searching for evidence to resolve the discrepancy and determine the lawful owner of the truck. Third, Mr. Hendrickson's contention that Officer Romaine should have asked Mr. Hendrickson about the discrepancy in the VIN and the license plate to resolve the issue of ownership is

devoid of merit. In light of the fact that Mr. Hendrickson had just been arrested for possession of the stolen trailer, Officer Romaine can hardly be expected to rely on Mr. Hendrickson's own statements in order to determine the truck's rightful owner.

Officer Romaine is also entitled to qualified immunity because no clearly established constitutional right was violated. Even if he conducted the search without probable cause, or if the community caretaking function did not apply, the Court concludes that under these circumstances, a reasonable officer in his position would not have believed the search violated Mr. Hendrickson's constitutional rights.

In addition, the City cannot be held liable because Mr. Hendrickson has not identified any policy that was the "moving force" behind the alleged constitutional deprivation.

Accordingly, this claim is dismissed as to all Defendants.

### 3.    Initial Impound of Truck, Pontiac, and Car Hauler

Mr. Hendrickson also moves the Court to find, as a matter of law, that Defendants illegally seized his property by impounding the truck, Pontiac, and car hauler. Mr. Hendrickson maintains that Defendants violated his constitutional rights by impounding the vehicles without providing pre-impoundment notice. Dkt. 134. Defendants move to dismiss this claim. Dkt. 130.

Officer Romaine's impounding of these vehicles did not violate Mr. Hendrickson's constitutional rights. Mr. Hendrickson's arguments focus primarily on the issue of whether the police are required to provide pre-impound notice to an owner of a vehicle when a vehicle is impounded because of "switched plates." Mr. Hendrickson mischaracterizes the impounding of the truck as being based solely on a "traffic infraction." While Officer Romaine testified that he had the vehicles impounded based on "switched plates," he also testified that ownership of the vehicles had not been established and that Mr. Hendrickson had already been arrested for possession of the stolen trailer. Defendants contend that the seizure was proper because Mr. Hendrickson had already

been arrested for possession of a stolen trailer, and because the VIN affixed to the truck was not registered to Mr. Hendrickson. Additionally, neither the Pontiac nor the car hauler came back registered to Mr. Hendrickson.

Mr. Hendrickson has not demonstrated that he was entitled to pre-impoundment notice. There is no dispute that, at the time of the impound, none of the actual VIN numbers were registered to Mr. Hendrickson. In addition, based on the arrest for possession of the stolen trailer, as well as the discrepancy in the registration of the truck, Officer Romaine had probable cause to believe that the truck, Pontiac, and car hauler were not owned by Mr. Hendrickson and may have been stolen. *See Brown, supra.* Alternatively, the officer's seizure was proper in order to safeguard property that may have belonged to a third party. *See Jamerson, supra.*

Officer Romaine is also entitled to qualified immunity for the same reason as set out in subsection (2), *supra.*

Because all claims based on Section 1983 against Officers Budinich and Romaine are dismissed, Mr. Hendrickson's claim for punitive damages necessarily fails. This claim is without merit, as there is no evidence supporting Mr. Hendrickson's claim that the officers acted with "evil motive or intent . . . [or acted in] reckless or callous indifference" to his constitutional rights. *See* Dkt. 153 (*quoting Smith v. Wade*, 461 U.S. 30, 156 (1983)).

In addition, the City cannot be held liable because Mr. Hendrickson has not identified any policy that was the "moving force" behind the alleged constitutional deprivation.

Accordingly, Mr. Hendrickson's claims alleging a violation of his constitutional rights based on the initial impounding of the vehicles fail as to all Defendants.

### 4. Sale of Vehicles

Mr. Hendrickson maintains that he was never provided notice to afford him the opportunity to challenge the validity of the impoundment, or to redeem his vehicles. He

now moves the Court to find, as a matter of law, that the City violated his right to post-impoundment notice in violation of the Due Process Clause and the Fourteenth Amendment. Dkt. 134. Mr. Hendrickson maintains that TMC 11.05.702 is unconstitutional because the ordinance only required the towing agency to provide post-impoundment notices to the "last known and legal owners as may be disclosed by the vehicle identification number," but not to an individual who has registered a license plate that is attached to an impounded vehicle. The City opposes Mr. Hendrickson's motion, and contends that Gene's was not required to provide post-impoundment notice, and in any event, Mr. Hendrickson failed to establish that Gene's relied on TMC 11.05.702 in this alleged deprivation. The City also moves for summary judgment on this claim. Dkt. 129.

"Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause." *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977). In procedural due process claims, the deprivation of property is not itself unconstitutional; rather, what is unconstitutional is the deprivation of a property interest without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The Constitution typically requires some kind of hearing before a state actor deprives an individual of property. *Id.* at 127.

The Court first addresses the issue of standing. The City argues that Mr. Hendrickson does not have standing because he had no ownership interest in the vehicles. The Court concludes that for the purposes of the pending motions only, Mr. Hendrickson has standing because there is a dispute as to whether he has such an ownership interest. There should not be a bright-line rule requiring a plaintiff to fully comply with DOL registration requirements prior to obtaining standing. If this were the case, a good faith buyer of a used vehicle who had not had the opportunity to register a vehicle prior to an impoundment would not have standing to file suit to recover his or her vehicle. The same

would hold true for a purchaser of a vehicle who submits registration paperwork containing good-faith clerical errors.

The Court declines Mr. Hendrickson's invitation to find, as a matter of law, that the City violated his right to post-impoundment notice. Mr. Hendrickson has not demonstrated that he is the true owner of the truck, Pontiac, or car hauler. Registration paperwork that does not include the proper VIN number is not valid proof of ownership. *See* RCW 46.12.030(1)(a) and RCW 46.12.020(1). Quite plainly, merely attaching a license plate to a vehicle, as the City is apparently alleging here, would not constitute ownership as a matter of law. With regard to the Pontiac and car hauler, Mr. Hendrickson has not directed the Court to any proof of ownership in the record, other than his own statements.

Mr. Hendrickson's claim that the City violated his constitutional rights under Section 1983 fails. Even if Mr. Hendrickson could establish that he owned the vehicles, he has failed to demonstrate that Gene's relied on TMC 11.05.702 when it sent notices only to the owners registered to the vehicle VIN numbers. Gene's representative stated that Gene's relied on state law, and Mr. Hendrickson has provided no evidence that contradicts this statement or demonstrates that Gene's relied on the local ordinance. Plaintiff cites Gene's representative Elizabeth Myer's deposition, where she stated that Gene's sends out notices based on VIN number registration, as contradicting her later statement that Gene's was following state law rather than local ordinance. The Court does not find these statements to be contradictory.

Even if Gene's had not complied with state law, Plaintiff has not provided legal authority that such noncompliance can give rise to liability under Section 1983.

**B.    MOTIONS TO STRIKE**

Mr. Hendrickson moves to strike Defendants' motions for summary judgment to the extent the total page number of those motions exceeds 24 pages. The Court denies this motion. While Local Civil Rule 7(e)(3) limits dispositive motions to 24 pages, the rule

does not impose such a limit when a party files multiple motions addressed to different issues. Mr. Hendrickson alleged 14 counts against Defendants, and Defendants are entitled the opportunity to challenge the merits of these claims.

Mr. Hendrickson also filed a surreply and moved to strike Defendants' inclusion of evidence pertaining to the alleged expiration of the registration for the impounded vehicles. The Court need not address this motion to strike, because the search and impound of the vehicle did not violate Mr. Hendrickson's rights regardless of the status of the registration. The Court did not consider the expired registration issue.

## V. ORDER TO SHOW CAUSE

Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy. The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the state claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

By this order, the Court dismisses all of Plaintiff's federal claims. The parties are ordered to show cause, if any, why the remaining state claims should not be remanded to state court.

## VI. ORDER

Therefore, it is hereby **ORDERED** that

1.    Defendants' motion for summary judgment based on collateral estoppel (Dkt. 124) is **GRANTED** as to any claims arising from Mr. Hendrickson's arrest for possession of stolen property, and these claims are **DISMISSED WITH PREJUDICE**.

2.      Defendants' motions for summary judgment based on municipal liability and qualified immunity (Dkts. 129 and 130) are **GRANTED**. Plaintiff's Section 1983 claims are **DISMISSED WITH PREJUDICE**.

3.      Defendants' motion for summary judgment regarding Plaintiffs' claim for punitive damages against Officers Romaine and Budinich under Section 1983 (Dkt. 132) is **GRANTED**, and this claim is **DISMISSED WITH PREJUDICE**.

4.      Plaintiff's motion for partial summary judgment (Dkt. 134) is **DENIED**.

5.      Plaintiff's negligent supervision and negligent hiring claims are **DISMISSED WITH PREJUDICE**.

6.      The parties are ordered to show cause, if any, why the Court should not remand the remaining state law claims no later than December 17, 2008.

DATED this 10th of December, 2008.

BENJAMIN H. SETTLE
United States District Judge